3 2 1 0 1 2 1 people of the state of Illinois Appalee v. Mason Shannon appellant. Miss Kreisen, if you're ready, you may begin. Okay. Thank you, Your Honor. Good afternoon, Your Honors, and may it please the court. My name is Katie Creason and I represent the appellant, Mason Shannon, along with my co-counsels Doug DeBoer and Paul DeLuca. Your Honors, we're here today because what happened in the lower court was unprecedented. Twenty months after the verdict was rendered in this case, ten months after the original trial judge recused himself due to his undisclosed financial interest in the verdict, six months after the new judge granted a new trial and denied the defense's motion for appointment of a special prosecutor, and a mere 26 hours before documents that would have revealed the prosecutor's misconduct would have been turned over to the defense, the former prosecutors in this case filed a motion for recusal that drastically changed the landscape of an already unusual case. Judge Dickinson said that the motion was alarming. He called it disturbing and that the timing was suspect because in that motion, the former prosecutors, Your Honor, asked to recuse themselves because of repeated acts of prosecutorial misconduct that now rendered the former prosecutors witnesses on any retrial. In that motion for recusal, they even acknowledged that the former elected state's attorney herself of LaSalle County would be testifying about an issue which could be determinative for the jury. Your Honors, this is not fair and retrial here does not comport with the double jeopardy clause. We're asking that the court reverse the trial court and dismiss this case on double jeopardy grounds for two main reasons. The first reason is that fair retrial here is impossible because the secret prosecutorial misconduct that only came to light after verdict have rendered a fair retrial impossible because they're going to be testifying in the case. And the second is that there's no exception to the plain language of the double jeopardy clause that would apply here. I want to start with the first point that fair retrial is impossible because I think that's what really separates this case from other cases interpreting the double jeopardy clause. Judge Ryan rendered his verdict in September 2018. And in that verdict, he noted that a lot of the facts here were not in dispute. In order to come to his verdict, he had to make two critical factual determinations. The first is the cause of death of Michael Castelli and the second was the time of death. The state's theory of the case is that Mason Shannon choked Michael Castelli to death, meaning that Mr. Castelli must have died when he was in Mr. Shannon's arms because Mr. Shannon was holding his neck in a way that blood flow stopped until he was dead. The defense put forth a theory that Mr. Castelli died of heart problems that were brought on by this physical altercation and that he died after he was handcuffed. It is undisputed now from the prosecution's motion for recusal that the former prosecutors are going to be witnesses on both of these issues. Your Honor, that's a problem because there's no denying that the future jury is going to give more weight to former prosecutors' testimony than they will to regular witnesses. It's why we have the advocate witness rule. It's one of the oldest rules in jurisprudence here. It's basic ethical rule that makes sense. Not only is there no way to stop the jury from according more weight to the testimony of former prosecutors, but it would be unreasonable to assume that those prosecutors themselves wouldn't tailor their testimony to the needs of the prosecution. I want to talk about how they are now witnesses on those two factual determinations. The first is the cause of death. The state put forth Dr. Valerie Arangelovich at trial, who testified that Mr. Castelli was choked to death. The defense put forth Dr. James Filkins, who said that he died of a heart condition. In his verdict, Judge Ryan specifically believed Dr. Arangelovich over Dr. Filkins. So her testimony and her credibility are key in this case. We now know, 20 months after the verdict, that it wasn't Dr. Valerie Arangelovich who drafted that opinion. It was Assistant State's Attorney Greg Sticca, and he didn't tell us about that. We now know that Dr. Valerie Arangelovich actually rejected a prior version of her expert report. She crossed out a sentence that said, quote, my physical findings are not consistent with sudden cardiac arrest. In other words, Your Honor, Assistant State's Attorney Greg Sticca asked his expert to specifically refute the defendant's theory of the case, and she chose not to do so. That's going to be an area that is material on retrial. And the state acknowledges in their refusal motion that the state's attorney had a conversation with Dr. Arangelovich about this change in this prior draft. Both the draft and the conversation are going to be areas of inquiry that the defense has to get into across examination, and they may need to call Assistant State's Attorney Greg Sticca now to testify about that. The state's recusal motion also acknowledged that the former elected State's Attorney of critical factual issue, the time of death. This relates to the testimony of James Klaus. James Klaus is one of four individuals, Your Honors, who had personal knowledge of what happened to Mr. Castelli that night. The state met with Mr. Klaus for a proffer statement, and they entered into a proffer agreement, which is standard. And what Mr. Klaus said to the state was that it was he who noticed that Mr. Castelli was unresponsive after he was handcuffed. This is critical testimony, Your Honors, because it supports the defendant's theory that Mr. Castelli was alive when he was handcuffed. Because if it was Mr. Klaus who first noticed that Mr. Castelli was unresponsive, that means that Deputy Norman must have handcuffed a dead man without not noticing. So despite knowing what Mr. Klaus was going to say, the prosecution gamed the system by refusing to grant him immunity to testify. We learned after trial from Mr. Klaus's attorney, Jack Donahue, that the prosecution stonewalled Mr. Klaus from coming back to offer a recorded proffer statement. The state acknowledges in the recusal motion that the proffer was not recorded, and that despite scrambling to find an investigator to sit in on the interview, Karen Donnelly herself was the one to take notes. Judge Dickinson called this sloppy, and he said it violates Prosecutor 101. Because now, as the prosecution acknowledges, Karen Donnelly is going to be a witness at retrial about Mr. Klaus's testimony. And again, that is fundamentally unfair, Your Honors. There's a reason why prosecutors are not supposed to be witnesses in cases in which they're involved. There's no way to cure that error, and this is an unavoidable handicap that Mr. Shannon is going to have to face just because of the prosecution's misconduct. Your Honor, the state didn't respond to any of these arguments in their response. They didn't dispute that there was prosecutorial misconduct, and they didn't dispute that that is the way that's going to permeate retrial. Instead, the state argues that the Double Jeopardy Clause simply doesn't offer relief in this situation. And that brings me to my second point. Your Honors, we're asking the court to interpret how the Double Jeopardy Clause should apply in a very, very unique situation. The Constitution has a mandate that the government cannot put a criminal defendant in jeopardy twice for the same offense, and that's a pretty clear mandate. But there are several exceptions that apply. You have the exception for hung juries, for trial court error, and for mistrials. In all of these situations, the government is still allowed to retry the defendant because there's still fairness. Each of these exceptions are rooted in fairness. It certainly wouldn't be fair to say the state doesn't get a chance to retry their case if a jury couldn't come to a determination. It wouldn't be fair to say they can't retry a case if the court can correct trial court error such that the defendant can get a fair trial. And in the case of mistrials, the United States Supreme Court has said that very different interests come into play because the defendant has made a knowing decision to give up his right to have his guilt or innocence decided in the first instance. All of these are rooted in fairness. Here, we have a situation that's completely unique from all of these exceptions. This isn't a hung jury. There was no mistrial, and this doesn't have to do with trial court error. We're talking about prosecutorial misconduct here, and not even, Your Honors, just regular prosecutorial misconduct. We're talking about conduct that has forever tainted the evidence that a jury is going to hear on retrial. There's no exception that applies here to the double jeopardy clause. The closest precedent that we have on point, Your Honors, is People v. Pendleton. That's the only case in which that deals with prosecutorial misconduct that was intended to be kept a secret and actually corrupted the evidence on mistrial. After the prosecutor's misconduct corrupted a victim witness's testimony, the first district found it so offensive to the constitutional guarantee to be free from double jeopardy that they vacated the convictions of five men found guilty of gang raping a victim. Consider that with me for a moment, Your Honors. The constitutional guarantee to be free from double jeopardy outweighed the fact that these five individuals were found guilty of gang raping a victim. The court was offended. And the court here should be offended, too, Your Honors. The two main issues of fact that will determine whether Mason Shannon is found guilty of involuntary manslaughter are going to be subject to the testimony of the former prosecutors in this case. There's no double jeopardy exception that applies here, and nor should the court try to divine an exception that should apply here. The equities lie in Mr. Shannon's favor. The double jeopardy clause concerns a couple things. It weighs the government's interest in holding a guilty person accountable against the burden, oppression, embarrassment of trial, and the possibility that an innocent person could be found guilty if they're tried more than once. Your Honors, there's a real risk here that an innocent person is going to be found guilty. Judge Dickinson said that this was a closely balanced case. And as I said, Judge Ryan really relied on two factual determinations. And now if this court does not reverse the trial court, both of those factual determinations are going to be subject to the testimony of the former prosecutors. Mr. Shannon will be facing a retrial with this added hurdle of having to overcome the It should shock this court's conscience to hear that the prosecutors repeated acts of misconduct that they kept a secret until Greg Sticca's Maya Culpa motion for recusal has deprived Mr. Shannon of a fair trial. He can't have a fair retrial, Your Honors. The Constitution can't permit this to stand, and we implore the court to do something about it. This court should reverse the trial court's order to uphold both the letter and the spirit of the constitutional mandate against placing a defendant in double jeopardy. At this time, I'd love to answer any questions that the court may have for me. I don't see any questions, Ms. Creason. Okay. Ms. O'Connell, if you're ready, you may proceed. Good afternoon. May I please the court? I'm Assistant Attorney General Erin O'Connell on behalf of the people. My argument should be relatively short because the state's belief is that the scope of this appeal is much narrower than the defendant is asserting. The only issue before this court on this interlocutory appeal is whether the double jeopardy clause bars a retrial. This court is not confronted with the question, the separate question, of whether the due process clause could, on a separate theory, warrant the dismissal of the charges. And I would just remind the court that in the circuit court were two separate motions. There was the motion to dismiss on double jeopardy grounds, and there was the motion to dismiss on due process grounds. The second motion is currently pending before the circuit court. If this court were to affirm the judgment here, this case would proceed immediately to a decision on those due process theories. Those are simply not before the court at this time. So because there is no broader due process question than before this court, the people have not engaged on these issues of whether there has been the sort of prosecutorial misconduct that would be relevant not to the due jeopardy clause, the double jeopardy clause, but to the due process question. The question for a double jeopardy is solely whether there has been the type of prosecutorial conduct that constitutes prosecutorial overreaching, that is intended by the prosecutor to go to defendant into seeking a mistrial. The defendant in this case is not even alleging that this has occurred. There was no mistrial to begin with, hence there could be no prosecutorial conduct intended to provoke a mistrial. That ends the entire analysis on the question before this court. It means that there is no double jeopardy bar to a retrial, and as to whether there may be other arguments in terms of fundamental fairness or due process, those are questions for the circuit court to address on remand. So unless the court has questions just on this narrow double jeopardy issue, the people would ask that the court affirm the denial of the motion to dismiss on that limited ground and remand this case for further proceedings. So, may I ask you about the Oregon case? Oregon? Yes. Do you think that's the answer to this appeal? So in that case, the Supreme Court did set forth the seemingly limited doctrine as to what type of prosecutorial conduct is relevant here under double jeopardy. So it determined in that case that only this type of intentional conduct intended to provoke a mistrial is relevant to due process. I mean, I apologize for confusing the two doctrines, to the double jeopardy analysis. So that case clearly on its facts doesn't apply here. It's certainly the case that it was a mistrial on that factual scenario, but it stands for the proposition that it's only in the mistrial context that we look at prosecutorial misconduct for double jeopardy purposes. So what case is controlling here for your position? I would assert I think the Oregon case is the most on point because it is the only case that addresses what type of prosecutorial conduct is relevant and its standard is clearly not met here. We certainly really can see that there are other theories on which defendant can seek dismissal. People versus Griffith, I think kind of delineated the separation that there is a type of prosecutorial conduct that's relevant to double jeopardy. And there is a separate question under the due process clause. And the first district in that case, too, was confronted with a similar situation to what this court has here, which is it was on an interlocutory appeal. The first district reasoned it could only reach this very narrow question under double jeopardy. And whatever due process theory there was to pursue was something to be addressed on remand following the interlocutory appeal. That was the correct approach by that court to recognize the two separate doctrines and the two separate theories available, and then to limit the scope of the interlocutory appeal to what's expressly provided for under the rule, which is just this narrow question of double jeopardy. And that case's name is? It's People versus Evan Griffiths. It's a 2010 case. Correct. Thank you. What about the context of double jeopardy that not only, I mean, they talk about the intentional misconduct to goad somebody into the trial, but also the motivation of bad faith. And so, you know, the two, I mean, in terms of, you know, the altering or changing the experts' report, wouldn't that, I mean, fall right into bad faith? I mean, I don't, you know, I know you understand that, you know, this really is premature that it's something that would only be occasioned after, you know, someone goes into a mistrial. But in this situation where there's already, you know, this is already set for another trial, it's been remanded for that. And now these things come to light with this recusal, and it at least appears there may be a very good argument for bad faith on the part of the prosecutor. Why wouldn't, you know, Pendleton and Cervantes and those cases give us the opportunity to make that correction right here? Well, here I would note a couple of things. I have sort of emphasized the doctrinal aspect here that this is, you know, not relevant to the double jeopardy. I would also note that there is a fact question in terms of the level of bad faith that was involved. So because of the posture of this case and the fact that the due process question was viewed as separate and not fully litigated, we don't have a full record in terms of the good or the bad faith on the prosecutor on that issue. Certainly, the prosecutor did decide that it was prudent to seek the appointment of the attorney general's office. So the prosecutor acknowledged that there was enough there that the state's attorney's office should no longer be responsible for this prosecution. The attorney general's office has taken over and can now litigate the question, but it hasn't yet been fully explored in terms of the level of bad faith that was involved here. Also, I think there's a lot of disagreement in terms of how this case would proceed on a retrial based on the source of prosecutorial misconduct alleged. I don't understand. The state is not intending to call the prosecutor as a witness at a retrial against the defendant. So that hasn't fully been developed either in terms of how the sides want to proceed. So that and that's a question for the trial court as well. If there's a potential prejudice to the defendant from proceeding in a way that will require the prosecutor to be a witness, the trial court has discretion to try to limit the impact of that sort of prejudicial testimony. And that's an evidentiary question going toward the retrial. So there are a few different principles in play here. We focused solely on what's the scope of double jeopardy. But there are questions of due process in terms of can there be a retrial. And then there are also questions of how should the trial proceed based on the new evidence that's come to light since the first trial. And those are issues for the trial court to review in the first instance and exercise its discretion after evaluating the intent involved and potential prejudice to the defendant in terms of proceeding in various ways. All of that that you're saying goes to not an issue that's before this court. We're on a narrow interlocutory appeal on a double jeopardy issue question. There's no question about that, is there? That's correct. So that would be beyond. That's a decision for another day by perhaps another court. That's correct. So that would be an issue for the trial court in the first instance on remand. It's also something that defendant should defendant lose on those issues in the trial court could then raise on a direct appeal. If there were a conviction that came out of that second trial, that would be the proper subject of a direct appeal. So those issues are simply not before the court today, but could be litigated in several ways following a remand on this double jeopardy question. So if the court has no further questions, we would ask that this court affirm the judgment below and remand for the further proceedings to take place. Thank you, Ms. O'Connell. Ms. Creason for rebuttal. Yes, Your Honors. I'd like to address three points on rebuttal. So the first is Ms. O'Connell's argument that only double jeopardy is before the court. We agree with you. We agree with Ms. O'Connell and we agree with Justice Holdridge. That's the only issue before the court. But to say that the public policy concerns that underlie the due process clause of the Fifth Amendment shouldn't equally apply to an analysis under the double jeopardy clause of the same amendment, I think would be silly. The courts have determined that there are certain interests that come into play when you're considering a double jeopardy analysis. And one of those is the possibility that an innocent person could be found guilty. Here, because there is no fair retrial, that's a very real possibility here. And the court should take that into account. So we should speculate, Ms. Creason? I'm not sure what you mean, Justice Holdridge. Well, that's speculative. I disagree. So I'll jump to my third point for you, Justice Holdridge. When Ms. O'Connell talked about how we don't even know that the prosecutors are going to be called because the state isn't going to call them, the defense doesn't want to call the prosecutors. But that's a very real possibility that it's going to happen. And so I guess it is a little bit speculative in the sense that we have to wait and see how the evidence comes into trial. But that's only for the Klaus issue. If it comes up that we have to impeach Mr. Klaus if he disputes his former proffer testimony. For Dr. Aaron Jelovich, Justice Holdridge, the defense is going to have to investigate into what this decision was between Dr. Aaron Jelovich and Assistant State's Attorney Greg Sticca in taking out that language. Greg Sticca talks about a conversation he had with Dr. Aaron Jelovich, and that's where this report came from. And then all of a sudden, she crossed out the defendant's theory of the case. We have to know how that came about. And it's unfortunate, but that's just what's going to have to happen to find the credibility of that statement in the prior draft. And it's unfair to consider the situation that Mr. Shannon will have to decide whether or not he has to forego that valuable impeachment evidence to not get this bias from the jury from having a former prosecutor testify. Well, this is a motion. This is a new trial. Are we not talking about a new trial? Yes, Your Honor. Okay. Are there any parameters on what the prosecution can introduce in a new trial? No, not that I'm aware of, Your Honor. Okay. I'm kind of thinking the difference between a possibility and a probability. So it sounds like Your Honor is thinking about maybe there's a way that the trial court can find some solution. And Your Honor, I would say that A, it's not possible because of what happened with Dr. Erin Jelovich. And B, it's not fair. It's not fair that the prosecutors 20 months after the verdict can come forth and say, here's everything we did wrong. Now you just have to deal with it on retrial. I would implore this court to hold that the double jeopardy clause has to apply in this situation to prevent that from happening. And my second point, Your Honors, has to do with the case law. So Ms. O'Connell said that Oregon versus Kennedy and People versus Griffith were controlling. And I disagree. Oregon versus Kennedy was talking about an exception to the double jeopardy clause, the exception for when a defendant requests a mistrial. And they found that the exception didn't apply because the prosecution didn't intend to go with that mistrial. Here, we're not talking about that exception at all, Your Honors. We're talking about a case of first impression and interpreting the double jeopardy clause in keeping with the principles that underlie it. And second, People versus Griffith, though it did concern prosecutorial misconduct, the court made clear that they were actually interpreting an issue of trial court error because the trial court refused to grant a mistrial. So at the end of the day, People versus Griffith was another error case that was prosecutorial misconduct that was out in the open for the defendant to make a decision about what to do about it. He asked for a mistrial and it was denied. The court found that that was error. And as we all can agree here, trial court error does not bar retrial because the defendant can still have a fair retrial once you fix the error. Here, this is not error. It's prosecutorial misconduct. It's egregious prosecutorial misconduct that is now corrupted the evidence on retrial. And it's not fair, Your Honors, to have Mr. Shannon go to retrial with this hurdle. Thank you, Your Honors. Thank you, Ms. Creason. Do you have any other questions, Justice Waldroger-Schmidt? I have no more. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. And with that, we will stand recess until tomorrow.